# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT M. HIGGINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. EDCV 17-963-KK<br><br><br>MEMORANDUM AND ORDER |

Plaintiff Scott M. Higgins ("Plaintiff") filed a Complaint seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Benefits ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED, and this action is REMANDED for further proceedings consistent with this Order.

## I.
## **PROCEDURAL HISTORY**

On April 10, 2008, Plaintiff filed an application for DIB, alleging a disability onset date of June 1, 2007. Administrative Record ("AR") at 77. On April 18,

2008, Plaintiff filed an application for SSI, alleging the same onset date. Id. On December 9, 2010, Plaintiff appeared with counsel and testified at a hearing before the assigned Administrative Law Judge ("ALJ"). Id. at 57-69. On February 25, 2011, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 74-84.

On May 6, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of February 26, 2011. Id. at 89-91, 95, 104-05, 117-19, 136. On May 17, 2013, Plaintiff filed an application for SSI, alleging the same onset date. Id. at 205. Plaintiff's application was denied initially on October 23, 2013 and upon reconsideration on January 31, 2014. Id. at 89-152. Plaintiff then requested a hearing before an ALJ. Id. at 175-77. On August 26, 2015, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 27-43. On October 14, 2015, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 7-21.

Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 5. On March 27, 2017, the Appeals Council denied Plaintiff's request for review. Id. at 1-3.

On May 17, 2017, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed on December 28, 2017. Dkt. 20, JS.

## II.

## **PLAINTIFF'S BACKGROUND**

Plaintiff was born on September 12, 1973, and his alleged disability onset date is February 26, 2011. AR at 89-91, 95, 104-05, 117-19, 136, 205. He was thirty-seven years old on the alleged disability onset date and forty-one years old at the time of the hearing before the ALJ. Id. at 19. Plaintiff has a high school education. Id. at 64. Plaintiff alleges disability based on seizures, anger management, affects from brain tumor surgery as a child, isolation, depression, anxiety, two back

2

surgeries, possible left knee surgery, obesity, allergies, and breathing problems after walking short distances. Id. at 91, 95, 104, 108, 119, 136.

### III.

### **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]
4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for his verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

5. Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

**A.  STEP ONE**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since February 26, 2011, the application date."  AR at 13.

**B.  STEP TWO**

At step two, the ALJ found Plaintiff "ha[d] the following severe impairment: seizure disorder."  Id.

**C.  STEP THREE**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id. at 16.

**D.  RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

to perform a full range of work at all exertional levels but with the
following nonexertional limitations; he must take reasonable
precautions to avoid injury to himself or others in case of seizure,
including avoidance of work at heights, around dangerous machinery
or driving; and he is able to perform at least simple, repetitive tasks
equating to unskilled work.

Id. at 16.

**E. STEP FOUR**

At step four, the ALJ found Plaintiff is "unable to perform any past relevant work." Id. at 19.

**F. STEP FIVE**

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. at 20.

**V.**

**PLAINTIFF'S CLAIM**

Plaintiff presents one disputed issue: whether the ALJ properly determined that Plaintiff does not have a severe mental impairment.

**VI.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To

determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence.'"). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885.

## VII.
## DISCUSSION

**THE ALJ'S STEP TWO FINDING REGARDING PLAINTIFF'S MENTAL IMPAIRMENTS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

**A.  BACKGROUND**

As stated above, on April 10, 2008 and April 18, 2008, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of June 1, 2007. AR at 77. On February 25, 2011, the ALJ issued a decision denying Plaintiff's applications. Id. at 74-84. In the current ALJ decision, the ALJ found Plaintiff had not rebutted the presumption of continuing nondisability by showing changed circumstances. Accordingly, the ALJ applied res judicata to Plaintiff's claim for

disability and adopted the findings of the prior ALJ in concluding Plaintiff was not disabled. Id. at 10.[2]

After finding the doctrine of res judicata applied to Plaintiff's new application for disability, the ALJ continued to address the issue of Plaintiff's disability during the unadjudicated time period since the 2011 ALJ decision. As with the prior decision, the ALJ found that Plaintiff's seizure disorder was his only severe impairment. Id. at 13. Specifically, the ALJ considered Plaintiff's mental health records for the unadjudicated period and found Plaintiff's "medically determinable mental impairment of mood disorder does not limit the claimant's ability to perform basic mental work activities and is therefore nonsevere." Id. at 14-15.

**B.    APPLICABLE LAW**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (1996); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so

---

[2]    Defendant argues this Court need not reach the merits of the disputed issue because the doctrine of res judicata is dispositive. Specifically, Defendant argues Plaintiff has not shown "changed circumstances" so as to rebut the presumption of continuing nondisability resulting from the prior ALJ decision. JS at 5-7.
    A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability. Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995). However, the presumption may be overcome by a showing of "changed circumstances." Id. at 827-28; see also Chavez, 844 F.2d at 693; Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).
    Here, it appears the current ALJ did not have before him all of the medical records the previous ALJ relied upon in determining Plaintiff was not disabled. Specifically, the previous ALJ discussed psychiatric and neurological examinations by David Bedrin, M.D., as well as State agency psychological opinions from the previously adjudicated time period. AR at 81. Those records are not in the current record. Accordingly, this Court cannot assess whether the current ALJ's finding of no "changed circumstance" was correct. Hence, this Court cannot find the ALJ's application of res judicata was proper.

7

slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). However, an overly stringent application of the severity requirement violates the Social Security Act by denying benefits to claimants who do meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); Webb, 433 F.3d at 686. If a claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); see also Webb, 433 F.3d at 686.

C. ANALYSIS

Here, the current evidence of mental health treatment is limited, as is often the case with social security applicants who suffer from mental health impairments and economic disadvantages. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1297 n.1, 1298 (9th Cir. 1999) (finding ALJ erred by rejecting treating

source opinion where plaintiff failed to seek further treatment due to poverty and noting it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). Nevertheless, the mental health evidence in the record is sufficient to meet the de minimis standard of finding Plaintiff's mental impairment had more than a minimal effect on his ability to perform basic work activity.

The mental health evidence from the unadjudicated period shows that Plaintiff suffered from depression. AR at 425, 438. In March 2013, Plaintiff was discharged from mental health treatment for failing to follow through with treatment.[3] However, at the time of his discharge, his Global Assessment of Functioning ("GAF") was reported to be 40. Id. at 419-20. Similarly, in April 2013, Plaintiff's GAF score was 47. Id. at 427-28, 457. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). According to the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-IV"), a GAF score between 31 and 40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." DSM-IV at 32. A GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school

---

[3] Additionally, Plaintiff's failure to follow through with treatment is, at least partially, attributable to both his mental health issues and his limited financial resources. AR at 420. Hence, Plaintiff's failure to seek further treatment does not support a finding that his mental impairments were "non-severe." See Ferrando v. Comm'r of Soc. Sec. Admin., 449 Fed. App'x 610, 611-12 (9th Cir. 2011) (plaintiff's failure to seek treatment for mental illness was not a clear and convincing reason to reject psychiatrist's opinion where failure to seek treatment is explained); Regenniter, 166 F.3d at 1297 ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." (citing Smolen, 80 F.3d at 1284)); Gamble v. Chater, 68 F.3d 319, 321-22 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."). The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

9

functioning." Id. Hence, Plaintiff's GAF scores reflect impairments as a result of his mental health issues.[4]

Additionally, in August 2013, a Complete Psychological Evaluation of Plaintiff was conducted. AR at 480-85. The evaluation established that Plaintiff's intelligence was within the low average range and he had a mild memory impairment. Id. at 483-84. According to the evaluator, Plaintiff exhibited moderate limitations in his ability to understand, remember, and carry out detailed instructions. Id. at 485.

Finally, the evidence from the unadjudicated period cannot be viewed in a vacuum. Rather, Plaintiff's history of mental health issues and treatment dates back to his pediatric brain cancer in 1981. Id. at 541-43. Although the record does not contain any reports specifically detailing Plaintiff's mental functioning during his childhood, his evaluations as an adult reveal significant mental impairments relating to his past cancer and related treatment.

In a January 11, 2016 neuropsychological screening, Plaintiff exhibited low average intelligence. Id. at 545, 547, 549-50. Also, he was reported to have low average to average working memory and processing speed, significant deficits in "cognitive flexibility/set shifting skills," and memory deficits on recall tasks. Id. at 546-47.

In a May 19, 2010 joint report of neuropsychology examiners from the Harbor-UCLA Medical Center, Plaintiff exhibited low average intelligence and verbal abilities, in addition to borderline nonverbal abilities. Id. at 661. In addition, Plaintiff scored in the low average range for simple attention, low average range for memory after a 10-minute delay, low average range for learning simple figures, and borderline range for recall of simple figures after a 20-minute delay. Id. at 661-62.

---

[4] "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir 2014).

10

Plaintiff's motor speed was borderline in his dominant hand and impaired in his non-dominant hand. Id. at 662. Plaintiff exhibited obsessive-compulsive tendencies and depressive symptoms. Id. The neuropsychology staff concluded Plaintiff met the criteria for Cognitive Disorder, Not Otherwise Specified. Id. at 663. Plaintiff also met the criteria for Mood Disorder, Not Otherwise Specified, as he exhibited depressive symptomatology and his mood "significantly affecting his ability to function." Id. at 664. The examiners concluded that, due to his mood and cognitive symptoms, Plaintiff would "not likely be able to gain and maintain employment," but that "[w]ith proper resolution of his mood symptoms, he may be able to maintain menial employment in [a] structured well supervised setting." Id.

Ultimately, the mental health evidence suggests Plaintiff's mental impairment has more than a minimal effect on his ability to do basic work activities. Based on this record, the Court concludes the ALJ's failure to find Plaintiff's mental impairment was severe for purposes of the Step Two analysis is not supported by substantial evidence.

## VIII.
## RELIEF

**A. APPLICABLE LAW**

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162. "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157

F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.  ANALYSIS**

In this case, the record has not been fully developed.  The ALJ must reconsider the severity finding at Step Two.  In addition, the ALJ should reconsider the issue of res judicata in light of the entire medical record.  Accordingly, remand for further proceedings is appropriate.

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: January 31, 2018

HONORABLE KENLY KIYA KATO
United States Magistrate Judge